Filed 4/7/21  In re Douglas S. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re DOUGLAS S., a Person Coming Under the Juvenile Court Law. | |
| | D076943 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J239877) |
| v. | |
| DOUGLAS S., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Browder Willis, Judge.  Affirmed and remanded with directions.

Sheila O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael P. Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

The juvenile court found that Douglas S. (Douglas), a minor, committed a felony assault by means of force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4))[1] and personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). At the disposition hearing, the juvenile court committed Douglas to the Youthful Offender Unit Program (YOU) at East Mesa Juvenile Detention Facility.

On appeal, Douglas contends that there is not substantial evidence in the record to support the juvenile court's finding that he inflicted great bodily injury on the victim. We conclude that the record contains substantial evidence to support the great bodily injury enhancement finding.

While this appeal was pending, we requested supplemental briefing as to whether the juvenile court erred in failing to calculate Douglas's maximum period of confinement. (See Welf. & Inst. Code, § 726, subd. (d)(1) ["If the minor is removed from the physical custody of his or her parent or guardian as the result of an order of wardship made pursuant to Section 602, the order shall specify that the minor may not be held in physical confinement for a period in excess of the maximum term of imprisonment which could be imposed upon an adult convicted of the offense or offenses which brought or continued the minor under the jurisdiction of the juvenile court"].) As both parties acknowledge in their supplemental briefs, the juvenile court erred in failing to calculate Douglas's maximum period of confinement and to indicate that period of confinement in the record.

---

[1] Unless otherwise specified, all subsequent statutory references are to the Penal Code.

Accordingly, we remand the matter to the juvenile court to permit that court to calculate Douglas's maximum period of confinement and to indicate that period of confinement in the record. In all other respects, the disposition order is affirmed.

## II.

## FACTUAL BACKGROUND

One afternoon in October 2019, the victim[2] was visiting with three friends outside an apartment complex. Douglas and a minor named D.L. passed the group in a vehicle. The victim had previously been friends with D.L., and the victim also knew Douglas.

Douglas got out of the car and approached the victim in an aggressive manner. Douglas accused the victim of betraying him and his gang. During the confrontation, D.L. also approached the victim. After Douglas finished confronting the victim, he began to walk away.

After Douglas walked away, D.L. slapped the victim across her face, hitting her nose. The victim responded by attempting to punch D.L., but she was unable to strike D.L. because the victim's friends were restraining her. D.L. began to walk away from the victim.

After the victim's friends released her, the victim ran after D.L. to confront her. By this time, D.L. was walking near Douglas. As the victim approached D.L., Douglas punched the victim in the face, hitting her below her right eye and on her nose. The force of the punch knocked the victim to the ground. The victim was unable to brace herself as she fell, and her head hit the concrete. Douglas and D.L. left the area.

After the incident, the victim walked a short distance to her residence. The victim's father drove the victim and the victim's stepmother to D.L.'s

---

[2]     The victim was 16 at the time of Douglas's adjudication hearing.

house, which was also nearby. While outside of D.L.'s residence, the victim's parents called the police.

Police officers responded to D.L.'s residence and spoke with the victim. After the victim spoke with the officers, paramedics arrived and took her to the hospital in an ambulance.

As a result of the incident, the victim suffered a facial contusion, a facial laceration,[3] a rib contusion, some knee pain, and, as discussed in greater detail in part III, *post*, a nasal fracture.

## III.

## DISCUSSION

A. *There is substantial evidence to support the trial court's finding that Douglas inflicted great bodily injury on the victim*

Douglas claims that there is not substantial evidence in the record to support the trial court's finding that Douglas inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). According to Douglas, the victim's "injury was only minor, [and] the evidence did not sufficiently support the great bodily injury [finding]."

1. *The juvenile court's great bodily injury finding*

After finding that Douglas committed the charged offense of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)), the juvenile court found that Douglas inflicted great bodily injury on the victim (§ 12022.7, subd. (a)) during the commission of that offense. The juvenile court stated in relevant part:

> "With regard to the [great bodily injury] allegation, I find that the only [great bodily injury] would be the fracture. There are two indications of the fracture. First, on page [three] [of the victim's medical records], that they

---

3       The laceration left a small scar under the victim's eye.

4

performed the diagnostic testing and found the right-sided nasal bone fracture.  And then when you go to page 47 [of the medical records]:  findings.  [']right-sided nasal bone fracture as seen.  No other orbital or mandible fractures.[']

"[S]o it is clear that there was a nose fracture.  [T]hat is [great bodily injury] [¶] . . . [¶] The court finds beyond a reasonable doubt that there is a true finding as to count 1 and the [great bodily injury] allegation."

2.  *Relevant law*

a.  *Standard of review*

In determining the sufficiency of the evidence to support a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 (*Jackson*), italics omitted.)  "[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

A challenge to the sufficiency of the evidence supporting a true finding on a great bodily injury enhancement (§ 12022.7, subd. (a)) is governed by the same substantial evidence standard of review.  (*People v. Escobar* (1992) 3 Cal.4th 740, 750 (*Escobar*)); see, e.g., *People v. Saez* (2015) 237 Cal.App.4th 1177, 1189.)  As the *Escobar* court explained:

"It is well settled that the determination of great bodily injury is essentially a question of fact, not of law. ' "Whether the harm resulting to the victim . . . constitutes great bodily injury is a question of fact for the jury. [Citation.]  If there is sufficient evidence to sustain the

jury's finding of great bodily injury, we are bound to accept it, even though the circumstances might reasonably be reconciled with a contrary finding." ' [Citations.]" (*Escobar*, *supra*, at p. 750.)

The standard of review of an insufficiency claim in juvenile cases is the same as in adult criminal cases. (*In re Matthew A.* (2008) 165 Cal.App.4th 537, 540.) In both instances, the reviewing court must " 'presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence' " and " 'make all reasonable inferences that support the finding of the juvenile court.' " (*In re Babak S.* (1993) 18 Cal.App.4th 1077, 1089.)

b. *Substantive law*

Section 12022.7, subdivision (a) provides, "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for three years."

"Great bodily injury is defined in section 12022.7, subdivision (f), as 'significant or substantial physical injury.' However, 'the injury need not be so grave as to cause the victim "permanent," "prolonged," or "protracted" bodily damage.' [Citation.] 'Proof that a victim's bodily injury is "great" . . . is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury.' " (*People v. Woods* (2015) 241 Cal.App.4th 461, 486 (*Woods*).)

3. *Application*

The record in this case contains each type of evidence that the *Woods* court stated is commonly used to establish the existence of great bodily injury. With respect to the severity of the injury, the People presented evidence that Douglas punched the victim in the face, below her right eye, on

6

the bridge of her nose. The force of the punch "knocked [the victim] to the ground," causing her to hit her head on the concrete. She suffered a "[r]ight-sided nasal bone fracture," from the punch.

The People also presented evidence that the victim suffered significant pain from the blow. When asked to describe the amount of a pain that she suffered from the punch on a scale of one to ten, with ten representing "an extreme amount of pain," the victim estimated her pain as being at an "eight." The victim also stated that Tylenol that she took on the day of the injury did "not really" alleviate her pain.

The People also presented evidence that the victim received medical care to diagnose and treat her injury. Medical records offered in evidence demonstrated that the victim underwent numerous diagnostic tests, including "CT Facial Bones w/o Contrast," "CT Spine Cervical w/o Contrast," and "CT Head w/o Contrast." The scan of her facial bones revealed a nasal fracture. A report from the emergency room stated:

> "Patient states she did fall backwards, she does not know [if] she lost consciousness or if she hit her head. Patient states she has significant pain, rates an 8 out of 10 over the right cheek, there is a laceration and swelling. Patient also complains of right shoulder pain, left knee pain and left-sided rib pain. Patient describes all the pain is throbbing. Patient does admit to mild lightheadedness."

Hospital personnel applied ice to the victim's face, and provided her with 650 milligrams of Tylenol.

In sum, the juvenile court could have reasonably relied on evidence in the record of " 'the severity of the victim's physical injury, the resulting pain, [and] the medical care required to treat or repair the injury' " (*Woods, supra,* 241 Cal.App.4th at p. 486), in finding that Douglas inflicted great bodily injury during the commission of the charged offense.

Douglas's arguments in support of his contention that the record lacks substantial evidence of great bodily injury are unpersuasive. Douglas's primary argument is that "[w]hile historically, a fracture alone was found to be a significant injury, courts have since found that an analysis of the specific facts of each case must take place." (See *People v. Nava* (1989) 207 Cal.App.3d 1490, 1497–1498 (*Nava*) ["a bone fracture does not qualify automatically as a great bodily injury"]; but see *People v. Villarreal* (1985) 173 Cal.App.3d 1136, 1140–1141 [concluding that jury was properly instructed " '[a] bone fracture constitutes a substantial and significant physical injury within the meaning of . . . [s]ection 12022.7' "].)

Even assuming that a bone fracture does not constitute great bodily injury as a *matter of law* (see *Nava*, *supra*, 207 Cal.App.3d at pp. 1497–1498), in performing a sufficiency analysis, we must view the "evidence in the light most favorable to the prosecution." (*Jackson*, *supra*, 443 U.S. at p. 319.) Thus, case law such as *Nava* does not establish that evidence of the victim's bone fracture does not constitute *substantial evidence* to support the trial court's great bodily injury finding. (See *People v. Quinonez* (2020) 46 Cal.App.5th 457, 464–465 ["While 'every bone fracture' is not great bodily injury as a matter of law, a jury 'very easily' could find a broken nose constitutes great bodily injury as a matter of fact if it 'results in a serious impairment of physical condition,' " quoting *Nava, supra*, at pp. 1497–1498].) In this case, based on evidence in the record as to the nature of the victim's injury, her resulting pain, and the medical treatment that she received (see *ante*), the juvenile court could reasonably find that the victim's nasal fracture constituted great bodily injury.

We are not persuaded by Douglas's contention that the juvenile "court ignored the testimony of the victim." To begin with, there is nothing in the

record to support Douglas's assertion as to how the juvenile court weighed the victim's testimony that he maintains was favorable to him. And even if the juvenile court *did* disregard the victim's testimony, "it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Maury* (2003) 30 Cal.4th 342, 403.) Moreover, Douglas mischaracterizes the victim's testimony pertaining to her injuries in two key respects. First, Douglas contends that "when asked whether her nose had any pain, [the victim] replied 'a little bit, I guess. Not really.'" However, in so testifying, the victim was distinguishing the pain from her "nose" injury with that related "to [her] eye," which the victim rated as an "eight." In addition, Douglas states that the "[victim] admitted that although her head hit the concrete, she did not lose consciousness." In fact, the victim testified that she could not *remember* whether she had lost consciousness.[4]

In sum, we conclude that there is substantial evidence in the record to support the trial court's finding that Douglas inflicted great bodily injury on the victim.

B. *The juvenile court erred in failing to calculate Douglas's maximum period of confinement and to indicate in the record that maximum period of confinement*

When a minor is removed from the custody of his or her parents pursuant to a wardship order, the juvenile court is required to indicate the maximum period of physical confinement. (Welf. & Inst. Code, § 726, subd.

---

[4]     The relevant testimony is as follows:

"[The prosecutor:] . . . [D]o you remember whether you lost consciousness or got knocked out at all?

"[The victim:] No."

9

(d)(1); *In re Julian R.* (2009) 47 Cal.4th 487, 497.)  The maximum period of confinement must be reflected in the court's minutes and may be orally stated.  (Cal. Rules of Court, rule 5.795(b); *In re Julian R., supra*, at p. 497.)

The juvenile court declared Douglas a ward of the court and removed him from his parents' custody.  However, the juvenile court did not note the maximum period of confinement in its minute order as required under California Rules of Court, rule 5.795(b), nor did it orally state the maximum period of confinement.

Accordingly, we remand the matter for the juvenile court to calculate a maximum period of confinement and indicate that period of confinement in the record, as required.

## IV.

## DISPOSITION

The matter is remanded for the juvenile court to calculate Douglas's maximum period of confinement and to indicate that period of confinement in the record.  In all other respects, the disposition order is affirmed.

AARON, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.

10